**Dr. Andrew HARASIM and Anna Cudzich, Plaintiffs,**

v.

**Donald KUCHAR, Star No. 16955, Thomas Gudgalis, Star No. 13457, Mary Ann Rice, Star No. 7593, Raymond T. Jaster, Star No. 17353, Robert E. Lamb, Star No. 4417, John P. Welsh, Star No. 13223, individually and as members of the Chicago Police Department, Defendants.**

No. 86 C 9931.

United States District Court, N.D. Illinois, E.D.

Dec. 2, 1988.

## MEMORANDUM OPINION
## AND ORDER

HART, District Judge.

Three defendants have moved for summary judgment on Count II of the Second Amended Complaint. The facts set out below resolve all factual disputes and draw all reasonable inferences in plaintiffs' favor.

Plaintiffs Andrew Harasim and Anna Cudzich resided at 3749 W. 70th Place, Chicago, Illinois at the times relevant to this suit. Harasim and Cudzich are a married couple. Cudzich's mother owned the residence and also lived there. Cudzich's brother Andy had lived at the residence in 1980, but not during 1985 or 1986 which is the time relevant to this suit. In January 1986, an arrest warrant was issued for Andy that listed his address as 3740 W. 70th Place.

Count I of the complaint alleges that defendant Donald Kuchar, a Chicago police officer, was conducting surveillance at plaintiffs' residence in May 1985 in hopes of finding Andy for purposes of arresting

him, either by finding Andy there or by harassing plaintiffs into helping Kuchar locate Andy. Plaintiffs complained to the police and two additional police officers from the Eighth District, Thomas Gudgalis and Mary Ann Rice, responded to the call. An altercation developed in which the police officers allegedly used excessive force, falsely arrested and imprisoned Harasim, and commited other alleged constitutional and state law violations. Plaintiffs subsequently complained to the Police Department about this conduct. Defendants are not seeking to dismiss this Count. Also, Gudgalis filed a countercomplaint in which he alleges Harasim assaulted and battered him during the May 1985 incident.

Count II names three other Eighth District police officers as defendants, Robert Lamb, John Welsh, and Raymond Jaster. Count II concerns an entry into plaintiffs' residence on March 14, 1986. The facts viewed in the light favorable to plaintiffs are as follows. Sometime in the Spring of 1986 Lamb went to 3740 W. 70th Place and found no one home. Lamb claims that people in the neighborhood, whom he cannot identify, told him "Andy" lived at or frequented 3749 W. 70th Place. He was also told Andy drove a red Chevrolet pickup truck and a purple peter-bilt tractor with the words "Purple Express" on the side. Lamb later learned that the "Andy" who drove the red Chevrolet was *Andrew* Harasim or *Anna* Cudzich—apparently he learned this after March 14. Lamb altered the arrest warrant to change the address to 374*9*. On March 13, Lamb went to 3749 W. 70th Place, but no one responded to his knock on the door. The basement window was open and Lamb considered entering through the window. He called for a backup and a higher ranking officer arrived who advised Lamb he had inadequate reason to enter the building.

Lamb returned to 3749 W. 70th Place around 7:00 a.m. on March 14. Before knocking on the door, he called for a backup. Jaster and Welsh arrived before he entered the residence.[1] Defendants point

to no evidence that either a red Chevrolet or the Purple Express was seen on the street. Lamb knocked on the door and Anna's mother answered. Lamb identified himself as a police officer and asked for "Andrew" or "Andy" "Sudzich". Without getting a response, he entered the residence without consent and proceeded to the basement where plaintiffs and their infant child were in bed sleeping. Jaster and Welsh entered the home shortly thereafter, also without consent. Lamb pointed a gun at and shined a flashlight upon plaintiffs and aroused them out of bed in a state of undress. He watched plaintiffs dress, then searched the house for Andy, who was not there. Lamb called plaintiffs "Polish dogs" and stole money from Harasim's wallet.

█ It was well settled law prior to 1986 that a valid arrest warrant can be a sufficient basis for searching for the subject of the warrant in his or her own residence, but that, absent exigent circumstances or consent, a search warrant is necessary to search for the suspect in another's residence. *United States v. Steagald*, 451 U.S. 204, 221, 101 S.Ct. 1642, 1652, 68 L.Ed. 2d 38 (1981); *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed. 2d 639 (1980). *See also United States v. Patino*, 830 F.2d 1413, 1415 (7th Cir.1987). Even if the arrestee's residence is being searched, there must also be "reason to believe the suspect is within." *Payton*, 445 U.S. at 603, 100 S.Ct. at 1388. *Accord United States v. De Parias*, 805 F.2d 1447, 1457 (11th Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 3189, 96 L.Ed.2d 678 (1987); *United States v. Terry*, 702 F.2d 299, 319 (2d Cir.), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983); *United States v. Spencer*, 684 F.2d 220, 223 (2d Cir.1982), *cert. denied*, 459 U.S. 1109, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983). The nonconsensual search of plaintiffs' residence was improper unless the officers had sufficient grounds to believe Andy resided

---

1. Welsh's affidavit states he and Jaster arrived after Lamb had already entered the residence. Lamb's deposition is to the contrary and the dispute must presently be resolved in favor of plaintiffs.

there [2] *and* had reason to believe Andy was present at the time of the search.

■ There is also the question of the effect of an incorrect address on the arrest warrant. As a general rule, an arrest warrant that correctly names the person to be arrested satisfies the Fourth Amendment particularity requirement. *Powe v. City of Chicago,* 664 F.2d 639, 645 (7th Cir.1981). *Wanger v. Bonner,* 621 F.2d 675, 682 (5th Cir.1980) (cited in *Powe,* 664 F.2d at 647), involved an arrest warrant with a correct name but incorrect address. In that case, the search of the incorrect address on the warrant was held to be improper. *Wanger* is distinguishable from the present case, but still instructive. Unlike the present case, the house being searched was the address actually listed on the warrant. The defendants in *Wanger* knew the addresses on arrest warrants were incorrect 20 to 25% of the time. They conducted no prior investigation of the accuracy of the address. They conducted their search at 2:00 a.m. and entered the house without consent even after Wanger had proved he was not the person named in the warrant and protested that the named person did not reside in the house. The implication of *Wanger* is that the address on the warrant is not alone sufficient, especially when there is an indication the address may be incorrect and there is insufficient confirmation of the address.

■ In the present case, the address on the arrest warrant when issued was not the address searched. Therefore the warrant alone could not constitute a basis for searching 3749 W. 70th Place; it was clearly necessary to have other information sufficiently indicating Andy resided at that address. The original address, which was one digit off, is a factor that could be considered by the police officers, but is not determinative. On the other hand, plaintiffs argue Lamb improperly altered the warrant and that, as a matter of law, Lamb

could not use it as a basis to search any residence that was not the original address on the warrant. It is true that the address on a search warrant limits searches to that address and that a police officer cannot alter the address without the approval of a judge or magistrate. *See People v. Trantham,* 55 Ill.App.3d 720, 13 Ill.Dec. 512, 371 N.E.2d 207 (1977). Plaintiffs cite no authority that altering the address on an arrest warrant invalidates it or that searches of a suspect's residence are limited to the address on an arrest warrant. To the contrary, *Powe,* 664 F.2d at 646, favorably cites *McCoy v. State,* 259 Ark. 607, 535 S.W.2d 439 (1976), where the name of the arrestee was altered but the warrant was still held to be sufficient since the unaltered description of the arrestee sufficiently identified him. Here, the name on the warrant sufficiently identified Andy. *See Powe,* 664 F.2d at 645. Pursuant to *Payton* and *Steagald,* the warrant would have been a sufficient basis for searching Andy's residence when there was reason to believe he was within.

Although not cited by either party, *United States v. Nezaj,* 666 F.Supp. 494, *reconsideration denied,* 668 F.Supp. 330 (S.D.N.Y.1987), is on point and to the contrary. That case holds that where the arresting agent believes a suspect's residence is an address other than that contained on the warrant, he or she must obtain the approval of a judicial officer to amend the warrant if he or she wishes to search the new address based on the warrant. *Id.,* 666 F.Supp. at 498–500. That court believed that a holding to the contrary would inadequately protect the interests of third parties whose homes might be searched. The court emphasized that arrest warrants with addresses on them involve a judicial determination as to that address whereas allowing searches based on the arresting agent's belief as to the suspect's residence permits

---

**2.** Plaintiffs do not cite any authority that Andy's actual status is determinative. A reasonable basis for believing Andy resided at 3749 W. 70th Place would be sufficient. *De Parias,* 805 F.2d at 1457. *See also Llaguno v. Mingey,* 739 F.2d 1186, 1192–93 (7th Cir.1984), *vacated & reh'd en banc,* 763 F.2d 1560 (7th Cir.1985), *cert. denied,* 478 U.S. 1044, 107 S.Ct. 16, 92 L.Ed.2d 783 (1986).

searches of homes without any judicial determination as to the residence.[3]

■ While there is some merit to this argument, the court does not find it to be persuasive in light of the existing precedents. *Nezaj* relies heavily on the passage in *Steagald* stating that an arrest warrant is not a sufficient basis for searching a third party's home because "[s]uch a warrant embodies *no judicial determination whatsoever* regarding the person whose home is to be searched." *Nezaj*, 666 F.Supp. at 499 (quoting *Steagald*, 451 U.S. at 214 n. 7, 101 S.Ct. at 1648 n. 7) (emphasis in *Nezaj*). The quoted passage itself refers to a judicial determination regarding the *person*, not a judicial determination as to the *home*. Moreover, the discussion in *Steagald* above this passage states that ordinarily a search warrant is needed to search a particular place, whether the subject of the search is an object or person. *Payton*, 445 U.S. at 602–03, 100 S.Ct. at 1388–89, however, is pointed out as recognizing an exception to this rule, requiring a person who is the subject of an arrest warrant "to open his doors to the officers of the law." *Payton* and *Steagald* rely on the judicial determination that a person can be arrested to permit searches of that person's home, not a judicial determination of the person's residence. This court chooses not to follow *Nezaj*.[4]

■ Summary judgment is only appropriate if the undisputed facts show both that there was a reasonable basis for believing Andy resided at 3749 W. 70th Place and reason to believe he was present at 7:00 a.m. on March 14, 1986. Lamb claims neighbors told him Andy resided at 3749

W. 70th Place. Lamb cannot identify these neighbors and also stated at one time that he was only told Andy frequented that address.[5] His questioning of neighbors also was not sufficient to distinguish between the various "Andies" that may have visited or lived at 3749 W. 70th Place. On these facts, a jury could find that Lamb did not have a reasonable basis for believing Andy resided at the address. Moreover, despite the limited information he had, Lamb made no attempt to question the person who answered the door even though he had other officers with him guarding other avenues of escape. *Cf. Wanger*, 621 F.2d at 682. Furthermore, Lamb's only basis for believing Andy was present at the time he searched was his belief that persons are always home at 7:00 a.m. There is no testimony that he verified this belief by seeing the red Chevrolet or Purple Express parked on the street. *Compare De Parias*, 805 F.2d at 1457. There is also no evidence that he had any information as to when Andy ordinarily came and went. Defendants are not entitled to summary judgment on the issue of the propriety of the search.

Welsh and Jaster argue there is no basis for holding them liable since they arrived after Lamb entered the residence. There is, however, evidence to the contrary. Under the facts that must be assumed to be true, Welsh and Jaster participated in the search and, like Lamb, had no adequate basis for the search. They are not dismissed from this case.

Plaintiffs concede that they have no separate claim based on the ethnic slurs or taking of the money. However, this may still be relevant evidence as to damages

---

**3.** *Nezaj*, 666 F.Supp. at 500, recognized that the holding in *De Parias*, 805 F.2d at 1457, was inconsistent with this holding, but rejected *De Parias* as lacking any discussion of the interests involved.

**4.** Even if this court agreed with the holding in *Nezaj*, it would not affect this case—at least as to the individual defendants. There is no clearly established law as of March 1986 that a search based on an arrest warrant is limited to addresses of the suspect that appear on the arrest warrant and have been approved by a judge or magistrate. The defendants, except the City,

would be qualifiedly immune from any liability based on a *per se* rule that an address not on an arrest warrant cannot be searched even if it is the suspect's residence.

**5.** Frequenting an address does not make one a resident. *See Patino*, 830 F.2d at 1414 (arrestee stayed at apartment "from time to time"). *But compare Washington v. Simpson*, 806 F.2d 192, 196 (8th Cir.1986) (arrestee was resident of address she stayed at two to four nights a week and kept clothing and other personal belongings at).

resulting from the unlawful search. While the court agrees with plaintiffs that the alleged illegal search could be part of a claim for retaliatory harassment, it would also stand independently as a claim for an illegal search. It must still be determined whether there is an adequate basis for continuing the harassment claim.

■ Plaintiffs claim the Count II defendants were harassing them in retaliation for filing a complaint with the Police Department and for injuring Gudgalis. Plaintiffs point to no direct evidence that the Count II defendants knew the officers involved in the Count I incidents. Defendants in each Count are only connected because they worked in the same police district.

In employment discrimination cases,

to establish a prima facie case of retaliat[ion], the plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) that there is a causal link between the protected expression and the adverse action.

*Collins v. State of Illinois,* 830 F.2d 692, 702 (7th Cir.1987) (quoting *Jennings v. Tinley Park Community Consolidated School District No. 146,* 796 F.2d 962, 966–67 (7th Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1895, 95 L.Ed.2d 502 (1987)). Analogous elements apply in this case. Plaintiffs have presented evidence of the first two elements. They have shown they filed a complaint with the Police Department and they have raised disputed facts as to an illegal search (adverse action) by defendants. Plaintiffs, however, have not presented evidence to support the third element: causation. Plaintiffs point to no link between the two incidents except that the two sets of defendants worked in the same police district. Also, the two incidents occurred ten months apart. *Compare Collins,* 830 F.2d at 705 (sufficient evidence to support causal connection where adverse action occurred very shortly after complaint filed). Plaintiffs' evidence is insufficient to raise a disputed fact as to the causation element. Count II is dismissed to the extent it claims retaliatory harass-

ment. The Count II claim as to an illegal search is not dismissed.

■ Plaintiffs have moved to bar evidence regarding qualified immunity. The question of qualified immunity is for the court, not the jury. *Rakovich v. Wade,* 850 F.2d 1180, 1202–03 (7th Cir.1988) (en banc); *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988). As discussed above, the law necessary for holding defendants liable on Count II was clearly established by the relevant date. Though defendants may have further opportunity to again raise the qualified immunity defense, *see Easter House v. Felder,* 852 F.2d 901, 916 n. 6 (7th Cir.1988), any further invocation of the defense will be to the court, not the jury. Plaintiffs' motion is granted.

■ Defendants have moved to exclude any evidence of damage to Harasim's professional reputation on the ground that Harasim refused to identify former patients who allegedly stopped coming to him as a result of the incidents alleged in the complaint. Harasim was given the opportunity to respond to this motion and failed to do so. The motion is granted.

IT IS THEREFORE ORDERED that:

(1) Defendants' motion for summary judgment on Count II is granted in part and denied in part. Count II is dismissed except as to a claim for an illegal search.

(2) Plaintiffs' motion in limine to bar evidence regarding qualified immunity is granted.

(3) Defendants' motion in limine to bar evidence as to severe damage to plaintiff Andrew Harasim's professional reputation is granted.