**Maggie M. NASH, Plaintiff,**

v.

**DOUGLAS COUNTY, Earl D. Lee, Robert Harper, Stan Copeland, Chris Hale and Bobby Holmes, Defendants.**

No. 1:88–cv–2504–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 17, 1989.

Robert A. Moss, Atlanta, Ga., for plaintiff.

Donald Burton Howe, Jr., Howe & Dettmering, Douglasville, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiff Maggie Nash brings this action against Douglas County, Georgia, Sheriff Earl Lee, and Deputy Sheriffs Robert Harper, Stan Copeland, Chris Hale and Bobby Holmes. Count I of the complaint seeks damages pursuant to 42 U.S.C. § 1983. Counts II through V of the complaint request relief on various pendent state law claims. Currently before the court is defendants' motion for summary judgment. For the reasons stated below, the court PARTIALLY GRANTS and PARTIALLY DENIES the motion for summary judgment.

FACTS

Plaintiff Maggie Nash is a citizen of the State of Georgia, residing at 1875 Mount Vernon Road, Lithia Springs, Georgia.

Defendant Douglas County is a political subdivision of the State of Georgia. Defendant Earl Lee is the Sheriff of Douglas County. Defendant Robert Harper is a lieutenant in the Douglas County Sheriff's Department. Defendant Stan Copeland is a captain in the Douglas County Sheriff's Department. Defendants Chris Hale and Bobby Holmes are deputies in the Douglas County Sheriff's Department. (Harper, Copeland, Hale and Holmes shall be referred to collectively as the "law officer defendants").

On July 9, 1987 at approximately 10:30 p.m. the law officer defendants arrived at Maggie Nash's home at 1875 Mount Vernon Road. Defendants were looking for Mrs. Nash's son, William Nash. Defendants had an arrest warrant for William for his alleged failure to pay child support. Defendants assert that they reasonably believed that William Nash lived with his mother.

The law officer defendants banged on Mrs. Nash's door. Mrs. Nash, who was asleep when the knocking began, awoke and proceeded to the front door. The officers requested permission to enter her home to look for William Nash. Mrs. Nash refused them admission, stating that William was not with her. Mrs. Nash requested to see a search warrant, which the defendants did not produce. It is uncontested that the officers did not have a search warrant for the premises. The officers continued beating on Mrs. Nash's door. When Mrs. Nash finally opened the door, approximately half an hour later, the defendants arrested her for obstruction of justice. Defendants claim that Mrs. Nash resisted arrest. Lieutenant Harper struck Mrs. Nash three times across the face, allegedly to subdue her. Harper handcuffed Mrs. Nash and left her face down on the floor. The defendants then proceeded to search Mrs. Nash's home. They looked through all the rooms in the house, as well as in drawers, cabinets and under the sink. Defendants did not find William Nash in the home.

After the officers concluded the search of the premises, they took Mrs. Nash to Douglas County Jail where she was charged with obstruction of justice and assaulting three police officers. Mrs. Nash was released on a bond in the amount of $2,000.00

Mrs. Nash brought this action alleging that the defendants deprived her of her Fourth and Fourteenth Amendment rights by engaging in an illegal search of her home. Mrs. Nash also contends that the law officer defendants used excessive force in arresting her. Defendants now seek summary judgment on the illegal search claim. First, defendants contend that Douglas County and Sheriff Lee are not liable for the action of the law officer defendants. Second, the law officer defendants claim that they are entitled to summary judgment on qualified immunity grounds.

DISCUSSION

I. *County Liability*

Plaintiff sues Douglas County and Earl Lee, in his official capacity as Douglas County Sheriff. Plaintiff has not alleged any direct action by these two defendants. Instead, plaintiff apparently seeks to hold these defendants liable for the acts of their agents, the law officer defendants.

Douglas County and Sheriff Earl Lee claim that plaintiff has failed to demonstrate that they promulgated any policy, practice or custom such that liability can attach to them for the acts the individual law officer defendants.

■ Section 1983 liability may not rest on a theory of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A local government entity may only be held responsible under section 1983 for the acts of its agents where the constitutional deprivation is caused by official policy, custom or practice. *Id.*

■ The issue in the case at hand is whether Douglas County had in effect a policy which allowed the individual officers to conduct a warrantless search of Mrs. Nash's home when executing an arrest warrant for her son. A secondary issue is whether the county had a policy or custom permitting the use of excessive force in making arrests. Plaintiff contends that Sheriff Lee and Douglas County had a written policy regarding the use of force. In addition, plaintiff claims that Lee "acquiesced to the actions taken by his subordinates in severely beating Mrs. Nash and in entering her residence without a warrant." Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, p. 6. Plaintiff cites to Sheriff Lee's deposition to support these assertions:

Q. All right. Are there any specific times when an officer can enter upon and search a person's property armed only with an arrest warrant but not a search warrant? An arrest warrant for someone in the house, but not a search warrant for that home?

A. Well certainly I think there'd be times that would be appropriate ...

(it) would make a difference based on whatever facts and circumstances that you might want to talk about, having to do with being reasonable to pursue someone.

Lee Deposition, p.p. 26–27.

Plaintiff contends that Sheriff Lee's "fact-specific" or "flexible" approach to searches constitutes a county policy in flagrant violation of *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1980). *Steagald* holds that an arrest warrant for an individual cannot provide the grounds for the full-blown search of a third-party's home absent exigent circumstances. *Id.* While plaintiff is correct in stating that a policy allowing warrantless searches of third-party's homes would run counter to *Steagald*, plaintiff has simply failed to demonstrate the existence of such a policy in the case at hand. Sheriff Lee's deposition remarks do not rise to the level of established county policy.

Plaintiff also maintains that Sheriff Lee and Douglas County are liable to plaintiff because they ratified the deputy defendants' conduct and, in addition, they failed to adequately train the deputy defendants. In her Brief in Opposition to Defendants' Motion for Summary Judgment, plaintiff asserts that the deputies relied on Lee for training and that Lee ratified the defendants actions. But beyond these bare assertions, plaintiff provides no evidence to substantiate these claims. Plaintiff thus fails to demonstrate the existence of a factual dispute for trial. Defendants are entitled to summary judgment on the county liability claim.

## II.  *Qualified Immunity*

Harper, Hale, Copeland and Holmes, ("the law officer defendants"), assert that they are entitled to summary judgment on qualified immunity grounds.

When an official violates an individual's constitutional rights, an action for mone-

tary damages may provide an effective remedy for the plaintiff as well as a deterrent to the defendant. However, permitting damage suits against officials also entails the risk that "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). The qualified immunity defense, first recognized by the Supreme court in *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), attempts to reconcile the need for an adequate remedy for constitutional abuses with the desire not to inhibit officials' independent exercise of discretionary duties.

In *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Court held that defendants in section 1983 cases are not entitled to qualified immunity if they "knew or reasonably should have known that the action [they] took within [their] sphere of official responsibility would violate the constitutional rights of the [plaintiff], of if [they] took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the [plaintiff]. *Wood*, 420 U.S. at 322, 95 S.Ct. at 1000–01. The *Wood* standard, with its subjective prong (the motivation of the defendant) and its objective prong (the reasonableness of the defendant's action), generated a seven-year period of prolific litigation. The Supreme Court opinions increasingly were tinged with a sense of uneasiness about the number of actions against government officials. *See, e.g., Butz v. Economou*, 438 U.S. 478, 507–508, 98 S.Ct. 2894, 2911–12, 57 L.Ed.2d 895 (1978).

Seven years after *Wood*, the Supreme Court changed course quite significantly.[1] In *Harlow*, the Court noted that, in many cases, the subjective element of the *Wood*

---

1. *Harlow* was not a section 1983 suit but an action against federal officials brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The analysis of the qualified immunity defense, however, is identical in section 1983 and *Bivens* cases. *See Davis v. Scherer*, 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984).

standard created disputed questions of fact concerning the defendant's good faith which frequently could not be resolved on summary judgment. *Harlow*, 457 U.S. at 816, 102 S.Ct. at 2737. The Court determined that the inquiry into an official's subjective motives required extensive discovery which proved disruptive of efficient government. *Id.* at 817, 102 S.Ct. at 2737–38. Thus, the Court framed a new test, deleting the "subjective" prong of the earlier *Wood* standard. The Court determined that the subjective prong "frequently has proved incompatible with our admonition in *Butz* that insubstantial claims should not proceed to trial." *Id.* at 815–16, 102 S.Ct. at 2737. *Harlow* provides that "government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738.

Following *Harlow*, the Court has refined and further developed the new objective qualified immunity standard. *See Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Anderson v. Creighton*, 483 U.S. at 635, 107 S.Ct. at 3034. In *Mitchell*, the Court analyzed the term "clearly established;"[2] in *Anderson*, it expanded on the "reasonableness" prong. The Court shied away from an abstract rule in *Anderson*. "(T)he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. At the outset, the relevant inquiry in *Anderson* seems to be whether a

reasonable officer could have believed the search at issue to be lawful in light of clearly established law *and* the information the searching officers possessed. However, later in the decision, the *Anderson* court states its hesitation "to complicate qualified immunity analysis by making the scope or extent of immunity turn on the precise nature of various officials duties or the precise character of the particular rights alleged to have been violated." *Id.* A synthesis of these two seemingly contradictory formulations is perhaps found in a rule requiring the trial court to conduct at least a minimal inquiry into the particular circumstances under which the official was operating in a given case.[3]

■ *Anderson* and *Harlow* thus form the backdrop for this court's inquiry into the reasonableness of the law officers' search. The court must determine whether reasonable law officers could have believed that the search of Mrs. Nash's home was proper in light of the circumstances surrounding the encounter. We hold they could not and deny defendants' motion for summary judgment.

There are two possible grounds on which the police officers could assert that their search of the Nash home was permissible. First, the officers could claim that they were entitled to search the home to look for William Nash. Second, the officers could assert a right to search the home incident to the arrest of Maggie Nash. The court analyzes these positions in turn.

In order for the officers to conduct a valid search of the premises for William Nash, they would have to have a reasonable belief that William Nash indeed lived at 1875 Mount Vernon. Alternatively, the officers could have obtained a search warrant to look for Nash in his mother's home.[4] It is undisputed that the officers

2. *Mitchell* is also significant for its reiteration of the *Harlow* holding that qualified immunity is "an entitlement not to stand trial ... an *immunity from suit* rather than a mere defense to liability." 472 U.S. at 526, 105 S.Ct. at 2815 (emphasis in the original).

3. Therefore, the Court arguably concedes that some discovery will almost always be necessary in qualified immunity cases.

4. *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) requires that an official obtain a search warrant before executing an arrest warrant for an individual on a third-party's property.

did not have warrant to search Mrs. Nash's home to look for William Nash. Rather, the officers contend that they reasonably believed that William lived with his mother. This court finds that such a belief was objectively reasonable given that William used his mother's address on his driver's license. In addition, William's blue Ford van was often parked in front of the home. Thus, the court concludes that the law officers were reasonable in their belief that William lived at 1875 Mount Vernon.

In executing an arrest warrant, the police may enter the premises in which they reasonably believe the suspect lives and is concealed. O.C.G.A. § 17-4-3; *see also Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388–89, 63 L.Ed.2d 639 (1980) (holding in *dictum* that for Fourth Amendment purposes, an arrest warrant carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within). In this case, however, the police entered the home and conducted a broadscale search, looking into cabinets and drawers. Deposition of Robert Harper, p.p. 52–54; Deposition of Maggie Nash, p. 25. This court holds that such a sweeping search did not legitimately flow from the arrest warrant for William Nash. Although Lieutenant Harper testified that he believed the suspect could be hiding in cabinets or in a vanity, this court does not find such a belief to be reasonable. The law is clearly established that a search warrant is required if the officers wanted to look in drawers, cabinets and vanities. Defendants violated a clearly established constitutional rule without a reasonable basis when they delved into Mrs. Nash's cabinets, drawers and vanities.

The second ground on which the defendants could arguably justify a search of the Nash home would be as a search incident to the arrest of Maggie Nash. After the police arrested Mrs. Nash they were entitled to search her person to "discover and remove weapons and to seize evidence to prevent its concealment or destruction." *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). But, "for the routine search of rooms other than that in which an arrest occurs, or for searching desk drawers of other closed or concealed areas in that room itself, absent well-recognized exceptions, a search warrant is required." *Id.*

The Court of Appeals for the Eleventh Circuit has determined that police may conduct a "protective sweep" of the house in order to check for other persons who may pose a threat to the officers. *United States v. Standridge*, 810 F.2d 1034 (11th Cir.1987). Such a sweep is "particularly reasonable" where the officers are arresting a suspect they believe to be armed and dangerous. *Id.* The facts of the case at hand hardly present a situation in which the officers can reasonably argue for an extension of the "protective sweep" rule. Mrs. Nash is a frail 75 year old women who was hand-cuffed and on the floor at the time of the search. Her son William was wanted for failure to pay child-support; he was not known to be armed or dangerous. The court finds that the extensive search of the home did not comport with the limits inherent on searches incident to arrest. Nor can the officers argue that the circumstances surrounding their encounter with Mrs. Nash justified a full-scale search without a warrant.

To summarize, the court finds that a full-blown search without a warrant clearly exceeded the authority invested in the police either through the arrest warrant or the right to conduct a search incident to the arrest of Mrs. Nash. Defendants are not entitled to qualified immunity for the warrantless search of Mrs. Nash's home.

CONCLUSION

The court PARTIALLY GRANTS and PARTIALLY DENIES defendants' motion for summary judgment.

The court GRANTS summary judgment to defendant Douglas County and defendant Sheriff Lee because plaintiff has failed to establish the existence of a factual dispute concerning county liability. Count I of the complaint is hereby dismissed against these two defendants. Counts II through V continue against Sheriff Lee and Douglas County.

The court DENIES defendants Harper, Hale, Copeland and Holmes summary judgment on qualified immunity grounds.

So ORDERED.