UNITED STATES of America, Appellee,

v.

Phillip LAUTER, Defendant–Appellant.

No. 1535, Docket 94–1645.

United States Court of Appeals, Second Circuit.

Argued May 16, 1995.

Decided June 12, 1995.

Steven M. Statsinger, Legal Aid Society, Federal Defender Div. Appeals Bureau, New York City (Marjorie Smith, Legal Aid Society, on the brief), for defendant-appellant.

Eric D. Bernstein, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY (Zachary W. Carter, U.S. Atty., Emily Berger, Asst. U.S. Atty., on the brief), for appellee.

Before: FEINBERG, ALTIMARI, and MAHONEY, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant Phillip Lauter appeals from a judgment of the United States District Court for the Eastern District of New York (Sifton, *J.*), convicting him, following a plea of guilty, of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, Lauter challenges only the district court's refusal to suppress the firearm seized from his apartment. First, Lauter claims that the officers should not have entered his apartment to arrest him because neither the arrest warrant nor the affidavit in support of the warrant specified that address. Second, he claims that the officers recovered the weapon in the course of a full-fledged warrantless search of his apartment, rather than during a permissible protective sweep. We reject both arguments and affirm the judgment of the district court.

## BACKGROUND

On February 4, 1993, Special Alcohol, Tobacco, and Firearms ("ATF") Agent Graham obtained an arrest warrant for Lauter and a search warrant for his residence, apartment 2R at 499 Williams Avenue in Brooklyn. The warrants were issued based on an affidavit containing information received from a confidential informant ("CI") who stated that Lauter, a convicted felon, possessed a shotgun. He also stated that Lauter had recently moved to apartment 2R from a basement apartment in the same building. Although the search warrant clearly identified Lauter's residence as apartment 2R, the face of the arrest warrant did not contain an address. On the back of the arrest warrant was written, under the heading "THE FOLLOWING IS FURNISHED FOR INFORMATION ONLY," that Lauter resided at 499 Williams Avenue in Brooklyn.

On February 7, prior to execution of the warrant, Graham learned from the CI that Lauter had moved to a second apartment in the basement of the same building. The CI acquired this information from his father, the landlord of the building. The CI also provided Graham with a description of Lauter, the basement layout, and the door of Lauter's new apartment. At approximately 8:30 the following morning, Graham and four other agents arrived at the basement apartment in which they believed Lauter was residing. After knocking and receiving no response, the agents pushed in the door and arrested Lauter, who had been roused from his sleep. The apartment, which had no windows, no kitchen, and no bathroom, consisted of two small rooms: the first room containing the door to the hallway of the basement, and an adjacent room containing a bed. Lauter was arrested in the first room.

Special ATF Agent Bradley was the first agent to enter the back room, and a few moments later Graham saw Bradley escorting Lauter's girlfriend from the room. Bradley did not say anything to Graham. Graham immediately went into the back room to

"back up" Bradley and to finish "conducting a security sweep of that room." The small back room contained only a nightstand and a queen-size mattress on a metal frame standing roughly three inches off the ground, with approximately three feet between the bed and the wall on either side of the bed. During his sweep, Graham looked to the left of the bed, and saw the stock of a shotgun protruding from underneath the bed. He seized the loaded gun, looked under the bed, and removed a bag of ammunition from an open drawer in the nightstand.

Lauter was charged with possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Lauter moved to suppress the firearm on the grounds that the agents unlawfully entered the apartment, and that once in the apartment they conducted an impermissible full-fledged search rather than a limited protective sweep. In a written Memorandum and Order dated May 21, 1993, the district court denied the motion to suppress. The district court concluded that the agents were not required to obtain a new arrest warrant once they learned that Lauter was no longer residing in apartment 2R, given that they had probable cause to believe that Lauter was residing and present in the basement apartment. The district court explicitly rejected Lauter's reliance on *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), and *United States v. Nezaj*, 666 F.Supp. 494 (S.D.N.Y. 1987). As to the recovery of the firearm, the district court concluded that the back room was "immediately adjoining" the room where the arrest occurred, and thus the cursory visual inspection by Graham was a permissible protective sweep under *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). Lauter subsequently pled guilty pursuant to a conditional plea agreement, thereby reserving the right to appeal the denial of his suppression motion. He was sentenced principally to thirty-seven months' imprisonment.

Lauter now appeals.

## DISCUSSION

### 1. Validity of Arrest Warrant

■ Lauter first argues that the agents should have obtained a new warrant after learning that he had moved to a new apartment. He argues that when the police believe that the target of an arrest warrant lives at an address other than the one listed on the warrant, they must apply for a new warrant before arresting the suspect at the new residence. Because the arrest warrant in this case was premised on a supporting affidavit that stated that Lauter lived in apartment 2R, Lauter claims that the agents could not decide on their own that he had moved to the basement apartment without consulting a magistrate. We reject this argument.

■ Generally, the police do not need a search warrant to enter a suspect's home when they have an arrest warrant for the suspect. *See Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980) ("an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within"); *see also Steagald v. United States,* 451 U.S. 204, 221, 101 S.Ct. 1642, 1652, 68 L.Ed.2d 38 (1981); *United States v. Terry,* 702 F.2d 299, 319 (2d Cir.), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983). As the Supreme Court has observed, once an arrest warrant for a particular suspect has issued, "it is constitutionally reasonable to require him to open his doors to the officers of the law." *Payton,* 445 U.S. at 602–03, 100 S.Ct. at 1388. Agents may enter a suspect's residence, or what they have reason to believe is his residence, in order to effectuate an arrest warrant where a reasonable belief exists that the suspect is present. *See Terry,* 702 F.2d at 319 (court relies on factors, such as telephone listing and statement from defendant's son, indicating that there was a "reasonable basis" for believing that defendant resided in and was present at apartment). *See also United States v. Magluta,* 44 F.3d 1530, 1535 (11th Cir.1995) (officers may enter residence to execute arrest warrant where they have "a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the

time of entry"); *Perez v. Simmons,* 884 F.2d 1136, 1140 (9th Cir.1989); *United States v. Stinson,* 857 F.Supp. 1026, 1031 (D.Conn. 1994); *Nash v. Douglas County,* 733 F.Supp. 100, 104–05 (N.D.Ga.1989); *Harasim v. Kuchar,* 702 F.Supp. 178, 181 n. 2 (N.D.Ill.1988). *Cf. United States v. Pichardo,* No. 92 CR. 354, 1992 WL 249964, at *3 (S.D.N.Y. Sept. 22, 1992).

Although we agree with the district court's ultimate conclusion, we note that it applied too stringent a test when it held that "officers may properly determine whether they have *probable cause* to believe that an apartment or house is the arrestee's residence, and if probable cause exists, they may enter such premises to effect the arrest when they have a reasonable basis to believe that the arrestee will be present." (emphasis added). As noted above, the proper inquiry is whether there is a *reasonable belief* that the suspect resides at the place to be entered to execute an arrest warrant, and whether the officers have reason to believe that the suspect is present. *See Magluta,* 44 F.3d at 1533, 1535. *See also United States v. Manley,* 632 F.2d 978, 983 (2d Cir.1980) ("the 'reasonable belief' standard ... may require less justification then the more familiar probable cause test"), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

In the instant case, the officers had reason to believe—and, as the district court found, even had probable cause to believe—that Lauter lived in the basement apartment and was present at the time they sought to execute the warrant. In particular, a reliable CI, whose father was the landlord at 499 Williams Avenue, told Agent Graham that Lauter moved to the basement apartment during the weekend. The CI also told Graham that Lauter was unemployed and typically slept late, thus supporting a reasonable belief that Lauter was present in the apartment when the warrant was executed.

The essence of Lauter's argument is that the officers should have appealed to a magistrate to consider the information regarding his new address. This argument suffers from several flaws. First, Lauter's address was immaterial to the determination of whether probable cause existed for his arrest. *See Stinson,* 857 F.Supp. at 1030 (Fourth Amendment "does not require officers to establish probable cause for identifying information, such as the suspect's address, that is included on the arrest warrant but not material to the ultimate probable cause determination"). Any discrepancy between the address in the supporting affidavit and the address where Lauter was ultimately arrested is irrelevant because all an arrest warrant must do is identify the person sought. *See Powe v. City of Chicago,* 664 F.2d 639, 645 (7th Cir.1981); *Harasim,* 702 F.Supp. at 181; *Pichardo,* 1992 WL 249964, at *5. Similarly, a change in address subsequent to the issuance of an arrest warrant is typically not significant because it does not alter the suspect's identity. In any event, the arrest warrant itself did not specify in which apartment Lauter lived, and as such there was no actual discrepancy between the warrant and the apartment where Lauter was arrested. Therefore, the officers were not required to have a magistrate evaluate the information regarding Lauter's new address. They could execute the warrant as long as they had reason to believe that Lauter was residing and present in the basement apartment.

Lauter contends that the authority described above is inapplicable, and that the governing cases are *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), and *United States v. Nezaj,* 666 F.Supp. 494 (S.D.N.Y.1987). In *Steagald,* the police entered Steagald's home based on an arrest warrant for Lyons, whom the police believed was visiting Steagald. While searching for Lyons, who was not present, the police discovered cocaine belonging to Steagald. The issue was thus whether an arrest warrant for one person was sufficient to protect the Fourth Amendment rights of persons not named in the warrant, but in whose homes the suspect was believed to be visiting. The Supreme Court concluded that "while the warrant in this case may have protected Lyons from an unreasonable seizure, it did absolutely nothing to protect [Steagald's] privacy interest.... Instead, [Steagald's] only protection from an illegal entry and search was the agent's personal

determination of probable cause." 451 U.S. at 213, 101 S.Ct. at 1648. Accordingly, the Supreme Court held that an arrest warrant for one individual did not authorize the search of a third party's residence where the officers believed the suspect was visiting.

In *Nezaj,* the agents had an arrest warrant for "John Doe a/k/a 'Enrique' a/k/a 'El Gordo,'" residing in a specified apartment. When the agents sought to execute the warrant at that address, they discovered that the suspect was not residing there, but the occupant took them to where he believed "Enrique" was residing, which turned out to be Nezaj's apartment. The district court suppressed the evidence implicating Nezaj that was seized from his apartment, relying principally on *Steagald.* The district court stated that because of Nezaj's privacy interests, "the magistrate, *not* the police officer, ... must decide whether probable cause exists that a particular dwelling is a particular felon's residence." 666 F.Supp. at 498. The district court held that

> when the arrest warrant lists no address, or when it lists an address other than the one the officers seek to enter, the privacy interests of third parties are strongly implicated.... To protect third parties and to give effect to the logic of *Steagald,* it must be a judicial officer, not the police officer on the scene, who decides whether there is reason to believe that a felon lives in a particular dwelling. *Id.* at 499.

Lauter contends that *Nezaj* and "the logic of *Steagald*" required the agents to test their beliefs as to Lauter's residence before a neutral magistrate, who could have issued a new arrest warrant.

Lauter's reliance on these cases is inapposite. Unlike the case at hand, *Steagald* involved the search of a third party's residence in order to locate a suspect named in an arrest warrant who did not reside with the third party. By contrast, in this case the officers entered an apartment in which they had reason to believe that Lauter was residing.

*Nezaj* is also distinguishable. We read the case to apply only where the identity of the suspect is established in part by his address. In *Nezaj,* the arrest warrant was issued for a "John Doe" residing at a particular address. Therefore, in contrast to the instant case, the suspect's address was relevant to the question of whether there was probable cause for his arrest. *See Stinson,* 857 F.Supp. at 1029 (interpreting *Nezaj* as limited to its facts); *Pichardo,* 1992 WL 249964 at *4 ("The holding in *Nezaj* is considerably narrower than Defendant claims ... and extends only to the facts presented in that case."). Moreover, to the extent that the district court in *Nezaj* intended to require officers to obtain a search warrant whenever an arrest warrant contains no address, or to get a new arrest warrant whenever a suspect's address changes, we reject the decision's reasoning as unsound and inconsistent with *Payton* and its progeny. In summary, the arrest warrant authorized the officer's entry into the basement apartment because the police had reason to believe that Lauter was residing and present therein.

**2. Protective Sweep**

Lauter next argues that even if the agents were lawfully in his apartment, the district court should have suppressed the firearm because it was recovered during an impermissibly broad protective sweep. (The government does not rely on the search warrant to justify the seizure of the shotgun, as that warrant was not for the basement apartment). When arresting a person in a residence, officers may perform a protective sweep incident to the arrest to protect themselves or others. In *Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990), the Supreme Court held that during an arrest, officers may "without probable cause or reasonable suspicion[ ] look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Beyond that limited cursory inspection, however, an officer must have articulable facts that support an inference that the area to be swept harbors an individual posing danger to those present. *Id.* The district court concluded that the back room was "immediately adjoining" the area in which Lauter was arrested, and thus deemed the sweep permissi-

ble even in the absence of any particularized suspicion.

Lauter contends that the search conducted by Graham was more than a cursory inspection for safety purposes. He relies on the following facts to support his claim that Graham instead was looking for incriminating evidence: Graham knew that another agent had already been in the back room; that agent did not instruct Graham to go into the back room; there was no reason to look next to the bed; and Graham seized ammunition from a drawer in the nightstand.

Aside from looking in the drawer, the fruits of which search were not introduced into evidence, Graham's conduct was well within the scope of a permissible protective sweep, particularly in light of the small size of the apartment. *See, e.g., United States v. Robinson,* 775 F.Supp. 231, 235 (N.D.Ill.1991) (bedroom is "immediately adjoining" room in which defendant was arrested). That another agent had already been in the back room did not preclude the possibility that there was some residual danger. Moreover, Graham was justified in looking in the space between the bed and the wall, as a person certainly could have been hiding in that location. As the gun was in plain view and Graham was legitimately in the room, seizure of the weapon was permissible. *See United States v. Jenkins,* 876 F.2d 1085, 1088 (2d Cir.1989). Because the protective sweep was not overbroad, the district court did not err in declining to suppress the shotgun.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the district court.