UNITED STATES COURT OF APPEALS

**Filed 12/20/96**

FOR THE TENTH CIRCUIT

PAUL W. ANDERSON, JR. and
JOYCE ANDERSON,

      Plaintiffs-Appellants,

v.

STAN CAMPBELL; CASEY OWENS;
STEVE WHITSON; and GREG
VALENCIA,

      Defendants-Appellees.

No. 95-6459
(D.C. No. CIV-94-156-P)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before PORFILIO, ALARCON,[**] and LUCERO, Circuit Judges.

      This case explores the area of law bound by Payton v. New York, 445 U.S.

573 (1980) on the one side, and Steagald v. United States, 451 U.S. 204 (1981) on

---

[*]      This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]      Honorable Arthur L. Alarcon, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

the other.[1]  In Payton, the Court stated that a felony arrest warrant founded on probable cause carries with it the "limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."  Id. at 603.  Steagald holds that absent exigent circumstances or consent, an arrest warrant does not justify entry into a third person's home to search for the subject of the arrest warrant.  Id. at 215-216.  We conclude the facts before us fit more neatly within Payton and affirm.

Plaintiffs Paul and Joyce Anderson sued four individual police officers with the Oklahoma City Police Department pursuant to 42 U.S.C. § 1983, alleging the officers violated their civil rights under the Fourth and Fourteenth Amendments by unlawfully entering their home to arrest their twenty-year old son, Steven Anderson.  At approximately 8:45 p.m. on the day in question, defendants came to plaintiffs' home in Oklahoma City to execute an arrest warrant for Steven.  The officers did not have physical possession of the warrant, but had confirmed its existence and validity moments before arriving at plaintiffs' residence.  Officers Valencia and Owens each went to a side of the home, while Officers Campbell and Whitson approached the front door.  Paul Anderson came to the front door

_____

[1]  After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

2

and told Officers Campbell and Whitson his son did not live there. Paul Anderson testified he refused to allow the police to enter the house because they exhibited neither an arrest nor a search warrant. Plaintiffs allege the officers unlawfully entered their home, physically attacked Paul Anderson using excessive force, and unlawfully arrested them.

The parties consented to assignment of the case to a magistrate judge, and the case proceeded to jury trial. At the close of plaintiffs' evidence, the magistrate judge granted defendants' motion for judgment as a matter of law (JMOL), pursuant to Fed. R. Civ. P. 50(a)(1), as to all of plaintiffs' claims against all of the defendants for unlawful entry. The magistrate judge also granted the JMOL motion as to all of plaintiffs' claims for unlawful arrest and excessive force against Officers Valencia and Owens, and these defendants were dismissed from the case. At the close of defendants' presentation of evidence, the magistrate judge denied plaintiffs' JMOL motion. The jury then returned a verdict against plaintiffs on all remaining claims, and the magistrate judge denied plaintiffs' motion for judgment notwithstanding the verdict (JNOV).

On appeal, plaintiffs allege the magistrate judge erred in granting defendants' JMOL motions and in denying plaintiffs' JMOL and JNOV motions; in giving improper instructions to the jury; and in allowing the introduction of certain testimony. We have jurisdiction under 28 U.S.C. § 1291.

3

## I. Grant of Judgment as a Matter of Law

Judgment as a matter of law is appropriate where a party has been fully heard on an issue and "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). We review the district court's grant of judgment as a matter of law de novo, applying the same standard as that applied by the district court. Sheets v. Salt Lake County, 45 F.3d 1383, 1387 (10th Cir.), cert. denied, 116 S. Ct. 74 (1995). In deciding whether to enter JMOL, the trial court "must view the evidence most favorably to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. The court may not weigh the evidence or pass upon the witnesses' credibility, or substitute its judgment for that of the jury." Hurd v. American Hoist & Derrick Co., 734 F.2d 495, 498 (10th Cir. 1984) (citations omitted). Our task is to determine whether there was evidence upon which the jury could return a verdict in favor of plaintiffs.

### A. Unlawful Search Claim

A felony arrest warrant founded on probable cause carries with it the "limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton, 445 U.S. at 603; United States v. Morehead, 959 F.2d 1489, 1496 (10th Cir. 1992), reh'g en banc sub nom, United

4

States v. Hill, 971 F.2d 1461 (10th Cir. 1992) (en banc) (affirmed on other grounds). Under Payton, officers executing an arrest warrant must have a "'reasonable belief that the suspect resides at the place to be entered . . . and [have] reason to believe that the suspect is present'" at the time the warrant is executed. United States v. Risse, 83 F.3d 212, 216 (8th Cir. 1996) (quoting United States v. Lauter, 57 F.3d 212, 215 (2d Cir. 1995); see also United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir.) (same), cert. denied, 116 S. Ct. 189 (1995). "[T]he officers' assessment need not in fact be correct; rather, they need only 'reasonably believe' that the suspect resides at the dwelling to be searched and is currently present at the dwelling." Risse, 86 F.3d at 216; see also Lauter, 57 F.3d at 215 (rejecting argument that "reason to believe" standard is the equivalent of "probable cause"); Magluta, 44 F.3d at 1534-35 (same).

The undisputed evidence before us demonstrates that the officers' belief that Steven was residing at plaintiffs' home, while perhaps not correct, was reasonable. The officers relied upon the arrest warrant listing Steven's address as plaintiffs'. Police officer Lieutenant Parker, who asked defendants to execute the arrest warrant, told defendant Campbell, the officer in charge of executing the warrant, that Steven lived at the address on the warrant. Parker had arrested Steven on prior occasions, and was familiar with Steven and his parents. The officers confirmed the arrest warrant as valid minutes before arriving at plaintiffs'

5

home. Plaintiffs do not dispute the validity of the arrest warrant, or contend the warrant was not supported by probable cause. Further, both plaintiffs admit it was reasonable for the officers to believe the address listed on the warrant was Steven's, and to come to their home based on that belief.

The officers also presented uncontroverted evidence that they had a reasonable basis to believe Steven was in plaintiffs' home when they attempted to execute the arrest warrant. In evaluating this second element of the Payton test, "courts must be sensitive to common sense factors indicating a resident's presence." Magluta, 44 F.3d at 1535. It appears from the record that lights were on inside the home when the officers approached. See Morehead, 959 F.2d at 1496 (holding that an illuminated light provided a reasonable basis for officers to believe the subject of an arrest warrant was within the building). Officer Whitson testified that when he and Officer Campbell arrived at the front door, he saw a man through the window walking to the door, and relayed this information to Officer Campbell. Although the officers later determined that this person was Paul Anderson, not Steven, Paul Anderson admitted that he and his son have "basically the same" height, weight and facial features, and that he looked young enough for the warrant's physical description of the suspect to have "easily" matched him. Moreover, the record indicates that the officers came to the home at 8:45 p.m., on a cold, snowy evening, a time when a person would reasonably be

6

expected to be at home.   Thus, the officers had sufficient reason to believe the suspect was inside the home.[2]  Payton does not require law enforcement officers to be absolutely certain that a suspect is at home before entering a residence to execute an arrest warrant.  See  United States v. May, 68 F.3d 515, 516 (D.C. Cir. 1995) (citing United States v. Terry, 702 F.2d 299, 319 (2d Cir. 1983)).

Plaintiffs argue that Paul Anderson's statement to the officers that Steven did not live there removed any basis for the officers' belief the suspect was in the home.  We disagree.  Officers may take into consideration factors that support an inference that the suspect is concealing himself inside the home.  Magluta, 44 F.3d at 1535 n.11 (citing 2 Wayne R. LaFave, Search and Seizure § 6.1(a), at 568 (1987)).  Given that the arrest warrant provided the officers with a reasonable basis to believe this home was the suspect's residence, and given that the officers had objective evidence indicating that the suspect was in the home, the officers in this case were not obligated to accept on faith the assertion of the suspect's father that the suspect was not there.

---

[2]    Officers Campbell and Whitson also testified that Paul Anderson immediately became belligerent and upset when they explained to him that they were there to arrest Steven, and tried to close the door on the officers while loudly denying that Steven lived there.  The officers stated that Paul Anderson's demeanor and actions indicated to them he was probably hiding his son inside the home.  However, Paul Anderson disputed this evidence of his demeanor, and we do not consider it for purposes of evaluating the magistrate judge's grant of JMOL.

Plaintiffs base their claim of unlawful entry on the Supreme Court's holding that, absent exigent circumstances or consent, an arrest warrant does not justify entry into a third person's home to search for the subject of the arrest warrant. Steagald, 451 U.S. at 215-16. However, Steagald is not applicable here because the officers had a reasonable belief that the suspect resided in plaintiffs' home. See Risse, 83 F.3d at 216; Lauter, 57 F.3d at 216; cf. United States v. Litteral, 910 F.2d 547, 553 (9th Cir.1990) (Steagald does not apply if suspect is co-resident of third party).

Finally, plaintiffs' argument that the entry was unlawful because the officers failed to produce the actual arrest warrant at the time of the entry fails. "[F]ederal constitutional law does not require the actual possession of a warrant in cases where the arresting officer has knowledge of its existence." Edwards v. Baer, 863 F.2d 606, 608 (8th Cir. 1988) (citing Washington v. Simpson, 806 F.2d 192, 196 n.4 (8th Cir. 1986)); cf. United States v. Ritchie, 35 F.3d 1477, 1482-83 (10th Cir. 1994) (holding actual possession of search warrant not necessary to commence search where officers know warrant has been issued and another officer en route with warrant).

Based on the uncontroverted evidence presented, it is clear that the officers' beliefs that Steven Anderson resided at, and was present within, plaintiffs' home were reasonable as a matter of law, and thus the officers could

enter the residence armed only with an arrest warrant for Steven. Therefore, the magistrate judge's grant of JMOL on plaintiffs' unlawful entry claim was appropriate, as was his denial of plaintiffs' JMOL and JNOV motions.

## B. Failure to Intervene

Plaintiffs next contend the magistrate judge erred in granting judgment as a matter of law in favor of Officers Valencia and Owens, the two officers who initially went to the side of plaintiffs' house but never entered their home. Plaintiffs argue the evidence supports liability for these officers under the principle that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. See Yang v. Harbin, 37 F.3d 282, 285 (7th Cir. 1994); Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

As discussed above, none of the officers made an unlawful entry into plaintiffs' home. Thus, Officers Valencia and Owens did not have a duty to prevent the other officers from entering the home. Even if we assume plaintiffs' allegations of excessive force and unlawful arrest to be true, the uncontroverted evidence is that Officers Valencia and Owens immediately ran to the front of plaintiffs' home when they heard the commotion, and immediately ordered Officers Campbell and Whitson out of plaintiffs' home, thus taking action to stop any alleged constitutional infringements. Because plaintiffs failed to present any

9

evidence that Officers Valencia or Owens violated any of their constitutional rights or failed to intervene to protect them from any alleged violations by Officers Campbell and Whitson, JMOL in favor of these defendants was appropriate.

## II. Instructions to the Jury

Plaintiffs next allege error in the instructions given to the jury. In considering whether the magistrate judge correctly instructed the jury, we "consider all the jury heard, and from the standpoint of the jury, decide not whether the charge was faultless in every particular, but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine these issues." King v. Unocal Corp., 58 F.3d 586, 587 (10th Cir.1995) (quotations and citations omitted).

Plaintiffs first challenge all instructions given to the jury because they allowed the jury to believe the officers' entry into their home was lawful. This contention, as well as plaintiffs' assertion that the magistrate judge erred in not giving their requested instructions number 11 and 12, merely restate their argument that the magistrate judge erred in taking from the jury the question of whether the officers' entry into their home was lawful. Thus, for the same reasons defendants' JMOL motion was appropriately granted, the magistrate judge

10

did not err in rejecting plaintiffs' requested instructions or in giving instructions indicating that the officers lawfully entered plaintiffs' home.

Plaintiffs also contend the magistrate judge erred in rejecting their proposed instruction defining arrest. We find no such error. The instruction used by the court stated that "[a]n arrest deprives a person of his or her liberty by legal authority. That is, the individual is not free to leave because of the assertion of legal authority." Id., Ex. 9, Instruction 8. This instruction comports with the general definition of arrest as occurring "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen," and as "[a] show of official authority such that a reasonable person would have believed he was not free to leave." Ritchie, 35 F.3d at 1481 (quotations and citations omitted). The emphasis in plaintiffs' instruction is that manual custody or restraint is not required to effectuate an arrest. The instruction used in this case does not imply otherwise.

Finally, plaintiffs object that instruction number 8, relating to the claim of unlawful arrest, and instruction number 10, relating to the claim of excessive force, both indicate that in judging the reasonableness of the officers' actions, due regard should be given to the fact that police are often required to make "spilt second" decisions. We are not persuaded that either one of these instructions is an incorrect statement of the law, and we perceive no reversible error.

11

## III. Admission of Testimony

Plaintiffs' final contention is that the magistrate judge erred by permitting Lieutenant Parker and his wife to testify about an occasion when Paul Anderson came to their home to complain about an earlier arrest of his son. They testified that when Lieutenant Parker was at work and Mrs. Parker was at home in the shower, Paul Anderson pushed his way into their home, yelling and screaming obscenities at the teenager who opened the door about Lieutenant Parker's arrest of Steven. The magistrate judge allowed this testimony because it was relevant to the credibility of Mr. Anderson's testimony that he had never previously been upset when his son was arrested. This testimony was also relevant to an element of Mr. Anderson's claim that he no longer felt secure around police officers as a result of the incident at issue here.

"A trial court has broad discretion to determine whether evidence is relevant, and its decision will not be reversed on appeal absent a showing of clear abuse of that discretion." Marshall v. El Paso Natural Gas Co., 874 F.2d 1373, 1380 (10th Cir. 1989) (citing Beacham v. Lee-Norse, 714 F.2d 1010, 1014 (10th Cir. 1983)). "The same standard of review applies to a trial court's determination, under Fed. R. Evid. 403, that the probative value of the evidence is outweighed by its potential to prejudice or confuse the jury." Id. The

12

testimony provided by the Parkers was relevant and probative on the issues of Paul Anderson's credibility and his claim for damages. The trial court balanced the potential for prejudice against the probative nature of the testimony and foundin favor of admission. We find no abuse of discretion.

AFFIRMED.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge

13