**UNITED STATES of America,**
**Plaintiff,**

v.

**Bruce Eugene MILES, Defendant.**

No. 99–40087–01–SAC.

United States District Court,
D. Kansas.

Dec. 17, 1999.

Melody J. Evans, Office of Federal Public Defender, Topeka, KS, for defendant.

Thomas G. Luedke, Office of United States Attorney, Topeka, KS, for plaintiff.

David J. Phillips, Office of Federal Public Defender, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On September 8, 1999, the grand jury returned an indictment charging the defendant, Bruce Eugene Miles, with one count of felon in possession of a firearm (in violation of 18 U.S.C. § 922(g)) and one count of possession of a stolen firearm (in violation of 922(j)).

This case comes before the court upon the following pretrial motions filed by the defendant:

1) Motion to Dismiss for Lack of Federal Jurisdiction (Dk.15); Memorandum in Support of Motion to Dismiss for Lack of Federal Jurisdiction (Dk.22); Supplemental Brief to Motion to Dismiss for Lack of Federal Jurisdiction (Dk.23).

2) Motion to Suppress (Dk.16); Memorandum in Support of Motion to Suppress (Dk.17).

The government filed a consolidated response to the defendant's pretrial motions. *See* (Dk.21).

On November 30, 1999, the court conducted a heating on the defendant's pretrial motions. At the close of the heating, the court took the matter under advisement. Having considered the arguments and briefs of counsel, the evidence presented, and the applicable law, the court is now prepared to rule.

1) **Motion to Dismiss for Lack of Federal Jurisdiction (Dk.15); Memorandum in Support of Motion to Dismiss for Lack of Federal Jurisdiction (Dk.22); Supplemental Brief to Motion to Dismiss for Lack of Federal Jurisdiction (Dk.23).**

The defendant contends that Congress lacked authority under the Commerce Clause and offended the Tenth Amendment when it enacted § 922. Specifically, the defendant challenges the jurisdictional element of § 922, arguing (1) that there is no substantial impact on interstate commerce (facially invalid), or (2) that even if only a minimal impact is required, the government still cannot support the element (unconstitutional as applied in this case). Although dedicating substantial time and effort to this motion, the defendant candidly concedes that the Tenth Circuit has "foreclosed the issue of the facial validity of this statute in *United States v. Farnsworth*, 92 F.3d 1001 (10th Cir.1996), [*cert. denied*, 519 U.S. 1034, 117 S.Ct. 596, 136 L.Ed.2d 524 (1996) ] and that this court must defer to that controlling precedent." Acknowledging the Tenth Circuit's unfavorable precedent, Miles apparently intends to press on to higher authority.

The government succinctly responds, arguing that the Tenth Circuit's decision binds this court and notes that other federal courts have also rejected jurisdictional challenges to § 922.

Bound by Tenth Circuit precedent, *see Farnsworth* and *United States v. Bolton*, 68 F.3d 396, 399 (10th Cir.1995), *cert. denied*, 516 U.S. 1137, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996), the defendant's motion to dismiss for lack of jurisdiction is denied.

2) **Motion to Suppress (Dk.16).**

Miles seeks an order suppressing from trial all evidence and information obtained directly or indirectly from the search of the apartment at 1535 South Topeka Blvd. on November 3, 1998. Miles contends that the search of the apartment was performed without warrant, exigency or consent. Miles also seeks to suppress from evidence all statements that he made in response to interrogation while in custody, arguing that he had not been advised of his *Miranda* rights. Specifically, Miles argues that law enforcement officers attempting to execute a warrant for his arrest coerced his girlfriend, Yvette Sugura, into consenting to the search of her apartment where he was staying as an overnight guest. After officers entered the residence and placed Miles under arrest but before he was advised of his *Miranda* rights, one officer, Officer Cochran, observed a chrome pistol in plain view on the television. That officer picked up the pistol and asked the persons in the room "Whose gun is this?" Miles responded that the pistol was his. During a subsequent interview at the police station, Miles signed a written waiver of his *Miranda* rights and made incriminating statements about the firearms. Miles seeks to suppress all of his post-arrest statements as fruit of the illegal search of Sugura's apartment. Alternatively, Miles argues that Officer Cochran's question to the persons in the room about "Whose gun is this?" was improper interrogation in violation of *Miranda*.

The government responds, arguing that Yvette Sugura's consent to search was voluntary and not the product of coercion. In the alternative, the government contends that prior to giving consent, Sugura admit-

ted that Miles was inside the apartment. At that point in time, the government contends that officers could lawfully enter the apartment to arrest Miles, either because they reasonably believed the apartment to be Miles' residence or due to exigent circumstances.[1]

As to Miles' statement regarding his ownership of the firearm, the government contends that Officer Cochran's statement was not intended to elicit an incriminating response from the defendant, but instead was aimed at the owner of the gun if present in the room at the time. At the time the question was asked, Yvette Sugura, Kendra Zabala and Miles were present in the room. The government contends that because the question was not directed at anyone in particular, the defendant's response was not the product of improper interrogation.

## Findings of Fact

Miles, a convicted arsonist, absconded from state probation supervision and a state felony arrest warrant was issued. On August 12, 1998, law enforcement officers attempted to arrest Miles at his mother's residence, the place where he also resided. While talking with officers attempting to arrest him, Miles bolted from the scene and escaped on foot. Subsequent attempts to apprehend Miles at his mother's residence proved fruitless.

State law enforcement officers received an anonymous "crime stoppers" tip indicating that Miles was staying or living at 1535 South Topeka Boulevard. On November 3, 1998, at approximately 9:00 a.m., two officers of the Topeka Police Force, Officers Obregon and Cochran, and a state probation officer, Beth Melcher, went to that address in the hope of locating and apprehending Miles. In light of Miles' past successful efforts to avoid arrest, Officer Cochran poised himself at the rear of the home to block that possible avenue of escape. The other two officers then knocked on the front door of the residence

and were greeted by Yvonne Sugura. In response to officers' query, Yvonne Sugura stated that she had heard Miles' name before, pointed her finger upward, and stated that her daughter, Yvette, lived in an upstairs apartment. Yvonne Sugura obtained a key so officers could access the stairwell leading up to that apartment.

Officers Obegron and Mechler ascended the stairwell to the apartment and knocked on the door and announced their presence as law enforcement officers. A man named Tony Solis answered the door. Officers indicated the purpose of their visit, to which Solis indicated something to the effect that Miles was not there. Solis then called inside the apartment to Kendra Zabala and told her that the police, who were at the door, needed to talk to Yvette. Solis then left the apartment.

Yvette, who had been asleep, was summoned to the door by Zabala. Officers told Yvette that they had an arrest warrant for Miles and that they had information he was staying at her apartment. Initially, Yvette denied that Miles was present in her apartment. However, the sincerity of her answers, her general nervousness and physical demeanor suggested that her response was less than candid. The officers asked for permission to check Yvette's apartment. Yvette indicated that she "rather they didn't." On her own accord, Yvette then stepped into the hallway outside her apartment and closed the door behind her.

Once outside her apartment, officers again asked Yvette Sugura if Miles was inside. In response, Yvette Sugura nodded her head to indicate "yes." The officers then asked Yvette Sugura for permission to search her apartment and she again nodded her head indicating that they could. Officers then entered the apartment.

As they entered the apartment, officers encountered Miles as he emerged from the back of the apartment with his hands

---

1. The government also makes an inevitable discovery argument which the court deems unnecessary to address.

raised, making no effort to escape. Officer Obregon told Miles that he was under arrest. Miles responded, stating "I know, I'm glad to get this stuff behind me; I'm tired of running." Miles was placed in handcuffs, but he was not advised of his *Miranda* rights.

Officer Cochran then noticed a small caliber automatic handgun, a .25 caliber Raven,[2] sitting on top of the television lying in plain view. Directing his question to everyone in the room, Officer Cochran asked "Whose gun is this?" Miles responded "It's mine."[3]

### Legal Standards

#### Execution of Arrest Warrants

In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court held that

> "[i]f there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."

*Id.* at 602–603, 100 S.Ct. 1371.

#### Execution of Arrest Warrant at a Third Party's Residence

█ *Payton* establishes the standards governing the lawful execution of an arrest warrant at the defendant's residence. Officers executing an arrest warrant at a third party's residence do not enjoy the same authority as they do when executing the arrest warrant at the defendant's residence. "[A]bsent exigent circumstances or consent, an arrest warrant does not justify entry into a third person's home to search for the subject of the arrest warrant." *United States v. Risse*, 83 F.3d 212, 215 (8th Cir.1996) (citing *Steagald v. United States*, 451 U.S. 204, 215–16, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981)).

In *Valdez v. McPheters*, 172 F.3d 1220 (10th Cir.1999), the Tenth Circuit recently set forth its summary the circumstances which would permit law enforcement officers to enter the residence of a third party to execute an arrest warrant when they did not also possess a search warrant for that residence:

> One of the circumstances which may permit an entry into a residence without a search warrant is the existence of a valid arrest warrant for a suspect who is believed to live in the residence. This is because "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton*, 445 U.S. at 603, 100 S.Ct. at 1388. "Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest

---

**2.** The indictment in this case charges Miles with illegal possession of the .25 caliber Raven, which is also alleged to have been stolen.

**3.** In its brief, the government proffers that during a subsequent post-arrest interview by United States Marshals, Miles was advised of his *Miranda* rights and chose to waive those rights. During that interview, Miles confessed that the .25 caliber Raven belonged to him. The defendant's brief agrees that Miles was interviewed by U.S. Marshals, that he executed a *Miranda* waiver, and that he was questioned about his ownership of the gun.

Unfortunately, the government presented no evidence regarding that post-arrest interview or the statements attributed to Miles during that interview, and therefore the court has no basis to determine their admissibility. The court notes that even if Miles' first statement "It's mine" in response to Officer Cochran's question was the product of a *Miranda* violation, that statement was nevertheless voluntary and uncoerced. Consequently, Miles' other post-arrest, post-*Miranda* statements regarding his ownership of the firearm would be admissible at trial if the government could sustain its burden of proving that Miles' confession to the United States Marshals was voluntary, notwithstanding a prior *Miranda* violation. *See United States v. Singleton*, 922 F.Supp. 1522, 1530–32 (D.Kan.1996).

him in his home." *Steagald,* 451 U.S. at 214 n. 7, 101 S.Ct. at 1649 n. 7. Absent exigent circumstances, however, an arrest warrant by itself does not authorize entry into the home of a third party. *Id.,* at 215, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38.

The majority of circuits which have addressed the issue have agreed that, under *Payton,* police officers entering a residence pursuant to an arrest warrant must demonstrate a reasonable belief that the arrestee lived in the residence, and a reasonable belief that the arrestee could be found within the residence at the time of the entry. *See United States v. Route,* 104 F.3d 59, 62 (5th Cir.) ("A valid arrest warrant carries with it the implicit but limited authority to enter the residence of the person named in the warrant in order to execute the warrant, where there is 'reason to believe' that the suspect is within"), *cert. denied,* 521 U.S. 1109, 117 S.Ct. 2491, 138 L.Ed.2d 998 (1997); *United States v. Risse,* 83 F.3d 212, 216 (8th Cir.1996) ("officers executing an arrest warrant must have a 'reasonable belief that the suspect resides at the place to be entered ... and [have] reason to believe that the suspect is present' at the time the warrant is executed"); *United States v. Lauter,* 57 F.3d 212, 215 (2nd Cir.1995) ("the proper inquiry is whether there is a reasonable belief that the suspect resides at the place to be entered ... and whether the officers have reason to believe that the suspect is present"); *United States v. Edmonds,* 52 F.3d 1236, 1248 (3d Cir.1995) (although "the information available to the agents clearly did not exclude the possibility that [the suspect] was not in the apartment, the agents had reasonable grounds for concluding that he was there"), *vacated in part on other grounds,* 52 F.3d 1236, 1251 (3d Cir. 1995), *cert. denied,* U.S. 519 U.S. 927, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996); *United States v. Magluta,* 44 F.3d 1530, 1535 (11th Cir.) ("the facts and circumstances within the knowledge of the law

enforcement agents, when viewed in the totality, must warrant a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry"), *cert. denied,* 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

The Tenth Circuit ultimately concluded that law enforcement officers are entitled to enter a third party's if there was a reasonable basis for believing that the fugitive both (1) lived in the residence and (2) could be found within at the time of entry. *Id.* As to the level of knowledge required by the officers, the Supreme Court in *Payton* explicitly indicated that entry is permissible so long as there is "reason to believe the suspect is within." 445 U.S. at 603, 100 S.Ct. 1371, 63 L.Ed.2d 639. There is no substantial reason to believe that the standard of knowledge should be different or greater when it comes to the other prong of the Payton test, whether the suspect resides at the house. It would be curious indeed if the two prongs of the test were governed by two different standards of proof.

More importantly, requiring actual knowledge of the suspect's true residence would effectively make *Payton* a dead letter. In the real world, people do not live in individual, separate, hermetically-sealed residences. They live with other people, they move from one residence to another. Requiring that the suspect actually reside at the residence entered would mean that officers could never rely on *Payton,* since they could never be certain that the suspect had not moved out the previous day and that a Bivens or a 42 U.S.C. § 1983 claim would then be made against them by another resident. The better rule is that both prongs of the Payton test are governed by the same test—reasonable belief on the part of the officers. The officers' belief need not prove true in fact, it is sufficient if the belief was objectively reasonable at the time of entry. *United States v. Risse,* 83 F.3d

212, 216 (8th Cir.1996). *See Anderson,* 104 F.3d 367, 1996 WL 731244, at *2 ("the officers' belief that Steven was residing at home, while perhaps not correct, was reasonable").

*Payton* and *Steagald* cannot be understood to divide the world into residences belonging solely to the suspect on the one hand, and third parties on the other. The rule announced in *Payton* is applicable so long as the suspect "possesses common authority over, or some other significant relationship to," the residence entered by police. *Risse,* 83 F.3d at 217. Thus, entry into a residence pursuant to an arrest warrant is permitted when "the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, must warrant a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry." *Magluta,* 44 F.3d at 1535.

Turning to the second prong of the *Payton* test, courts "must be sensitive to common sense factors indicating a resident's presence." Direct surveillance or the actual viewing of the suspect on the premises is not required. *Magluta,* 44 F.3d at 1535, 1538. Indeed, the officers may take into account the fact that a person involved in criminal activity may be attempting to conceal his whereabouts. *Id.,* at 1538. The suspect's presence may be suggested by the presence of an automobile, *United States v. Morehead,* 959 F.2d 1489, 1496 (10th Cir.1992), *aff'd on other grounds sub nom., United States v. Hill,* 971 F.2d 1461 (10th Cir.1992) (en banc); *United States v. Beck,* 729 F.2d 1329, 1331–32 (11th Cir.1984); *Magluta,* 44 F.3d at 1537–38; the time of day, *United States v. Terry,* 702 F.2d 299, 319 (2d Cir.), cert. denied, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983) (reasonable to believe suspect would be at home at 8:45 a.m. on Sunday morning); *Edmonds,* 52 F.3d at 1248 (entry at 6:45 a.m. was "early enough that it was unlikely someone living in the apartment would have already departed for the day"); *Anderson,* 104 F.3d 367, 1996 WL 731244 ("the officers came to the home at 8:45 p.m., on a cold, snowy evening, a time when a person would reasonably be expected to be at home"); observing the operation of lights or other electrical devices, *Route,* 104 F.3d at 63 (officers heard television set left on inside residence after third person left residence); *Magluta,* 44 F.3d at 1538 (observations that "the lawn was manicured and a porch light was on" gave "no indication that Magluta departed, such as for work or the like"); *Morehead,* 959 F.2d at 1496 (holding that an illuminated light provided a reasonable basis for officers to believe the subject of an arrest warrant was within the building); and the circumstances of a suspect's employment, *Lauter,* 57 F.3d at 215 (officer's conduct reasonable since they knew the suspect "was unemployed and typically slept late"); *United States v. Woods,* 560 F.2d 660, 665 (5th Cir. 1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1452, 55 L.Ed.2d 497 (1978) (reasonable to believe suspect would be "at his place of abode, especially at 8:30 in the morning for a man not known to be working"). And the officers may consider an absence of evidence the suspect is elsewhere. *See Terry,* 702 F.2d at 319 (one factor in supporting reasonableness was twelve-year-old son's failure to indicate father was not inside). No single factor is, of course, dispositive. Rather, the court must look at all of the circumstances present in the case to determine whether the officers entering the residence had a reasonable belief that the suspect resided there and would be found within.

*Id.* at 1224–26.

### Analysis

■ Based upon all of the information known to the law enforcement officers at the time they entered Yvette Sugura's apartment, the court concludes that the officers reasonably believed that Miles re-

sided at the apartment and would be inside. Law enforcement officers could reasonably believe from their repeated attempts to apprehend Miles at his mother's home that he no longer resided at that residence. An anonymous tip suggested that Miles was staying or residing at 1535 South Topeka Boulevard. The ostensible owner of the home at that address, Yvonne, knew Miles' name and pointed to the upstairs apartment when asked if she knew Miles' location. After Yvette's admission that he was inside, the officers could have reasonably believed that the peripatetic and elusive Mr. Miles had taken up residence at the apartment and could be found within.

■ In the alternative, the court finds that entry into the apartment was lawful because the officers possessed an arrest warrant, had a reasonable factual basis to believe that Miles was inside the apartment and that exigent circumstances warranted their immediate entry to apprehend Miles. Yvette's admission that Miles was inside the apartment undoubtedly provided a reasonable basis for officers to believe that Miles was inside the apartment. In light of Miles' past successful flight from the hands of law enforcement officers and his success in eluding apprehension since that time, the combination of circumstances provided sufficient exigency to enter the apartment to place Miles under arrest.[4]

4. The court simply notes that under circumstances somewhat similar to the facts of this case, the Second Circuit has held that officers who had probable cause to believe that a third party was harboring a fugitive could lawfully arrest that person and search that third party's apartment incident to his arrest. *See United States v. Donaldson*, 793 F.2d 498, 501–503 (2nd Cir.1986) ("Our holding, rather, is that when an investigation on the scene develops probable cause to arrest the third party on those premises for harboring a fugitive, a warrantless search may then be made, just as if an investigation on the scene had developed probable cause to believe that the third party was guilty of running drug mill."),

## Consensual Searches

A warrantless search of a suspect's premises is unreasonable per se under the Fourth Amendment unless the government shows that the search falls within one of a carefully defined set of exceptions, such as a valid consent. *United States v. Butler*, 966 F.2d 559, 562 (10th Cir.1992). Whether a consent to search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined by the totality-of-the-circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973). In determining whether a consent to search is voluntary, a court should consider the following: physical mistreatment, use of violence or threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant. *United States v. McCurdy*, 40 F.3d 1111, 1119 (10th Cir.1994). Evidence obtained by a consent-based search is admissible only if the government (1) produces clear and positive testimony that the consent was unequivocal, specific, and freely given, and (2) proves that the consent was given without duress or coercion, express or implied. *Butler*, 966 F.2d at 562. *United States v. Glover*, 104 F.3d 1570, 1583–84 (10th Cir.1997).

## Validity of Third Party's Consent

■ The law is well-settled that a warrantless entry and search by law enforce-

cert. denied, 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987). In the case at bar, Yvette Sugura essentially admitted to the officers that she was knowingly harboring Miles, a state fugitive, in violation of K.S.A. 21–3812, titled "Aiding a felon or person charged with a felony; aiding a person convicted of or charged with committing a misdemeanor." In light of its other findings and legal conclusions, the court deems it unnecessary to determine whether Sugura's admission that she was harboring a state fugitive would have provided independent justification to arrest her and search her apartment incident to her arrest.

ment officers does not violate the Fourth Amendment's proscription of "unreasonable searches and seizures" if the officers have obtained the consent of a third party who possesses common authority over the premises. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). "The common authority justifying the consent need only rest 'on the mutual use of the property by persons having joint access or control for most purposes.'" *United States v. Sealey*, 830 F.2d 1028, 1031 (9th Cir.1987) (*quoting Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. 988). In *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the Supreme Court held that a warrantless entry by law enforcement officers is valid when based upon the consent of a third party whom the police, at the time of entry, reasonably believe to possess common authority over the premises, but who in fact does not have such authority.

■ "The government has the burden of proving the effectiveness of a third party's consent." *United States v. Salinas–Cano*, 959 F.2d 861, 864 (10th Cir.1992) (*citing Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990) and *United States v. McAlpine*, 919 F.2d 1461, 1463 (10th Cir.1990)).

### Analysis

■ Even if the entry into Yvette Sugura's apartment to search for Miles was not a valid execution of the arrest warrant, the court finds that the government has carried its burden of demonstrating that Yvette's consent to search her own apartment (which she apparently shared in some manner with Miles) was the product of unequivocal, specific, and freely given consent, and that her consent was given without duress or coercion, express or implied. Although the officers asked Yvette for consent to search more than one time, Yvette's own conduct suggested that she, of her own accord, chose to reveal the fact that Miles was inside. Yvette apparently knew it was unlawful to harbor a wanted fugitive and determined that it was in her own best interest to be truthful and candid

with officers and to allow the officers to enter the apartment to place Miles under arrest. In short, the court finds that Yvette consented to the officers' entry into the apartment she shared in some manner with Miles.

### Seizure of the Firearm

■ Once inside the apartment, either pursuant to a consensual search or the valid execution of an arrest warrant, the officers were free to seize, at least momentarily for their safety and the safety of others in the area, the firearm which was in plain view. *See United States v. Pillow*, 842 F.2d 1001, 1004 (8th Cir.1988) (firearm in plain view was subject to seizure as a reasonable safety precaution); *United States v. Malachesen*, 597 F.2d 1232, 1234–35 (8th Cir.) ("Although the incriminating nature of the handgun may not have been immediately apparent to investigating officers, its temporary seizure, unloading and retention by a responsible officer (here the inventory officer) seems a reasonable precaution to assure the safety of all persons on the premises during the search."), *cert. denied*, 444 U.S. 902, 100 S.Ct. 214, 62 L.Ed.2d 139 (1979).

Miles' request to suppress the firearm is denied.

*Miles' Incriminating Statements:*

■ Based upon its conclusion that the officers lawfully entered Yvette Sugura's apartment, the court rejects Miles' argument that his admission that the gun belonged to him in response to Officer Cochran's question as well as his subsequent statements to the U.S. Marshals, were the product of an illegal search of that apartment. And even if the officers had violated *Payton*, the exclusionary rule would not bar the admission of Miles' statements. *See New York v. Harris*, 495 U.S. 14, 21, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990) ("We hold that, where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even

though the statement is taken after an arrest made in the home in violation of *Payton*."). The court must now determine whether Officer Cochran's question "Whose gun is this?" violated Miles' *Miranda* rights. *See Harris,* 495 U.S. at 20, 110 S.Ct. 1640 ("We do not hold, as the dissent suggests, that a statement taken by the police while a suspect is in custody is always admissible as long as the suspect is in legal custody. Statements taken during legal custody would of course be inadmissible, for example, if they were the product of coercion, if *Miranda* warnings were not given, or if there was a violation of the rule of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).").

### Legal Standards

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." "These safeguards include certain rights that an accused must be informed of and must waive before custodial interrogation can commence." *United States v. Bautista,* 145 F.3d 1140, 1146 (10th Cir.), *cert. denied,* 525 U.S. 911, 119 S.Ct. 255, 142 L.Ed.2d 210 (1998). Specifically,

> [a suspect] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda,* 384 U.S. at 479, 86 S.Ct. 1602. "Only if there is a voluntary, knowing, and intelligent waiver of these rights can authorities question a suspect without counsel being present and introduce at trial in the case-in-chief any statements made during the interrogation." *Bautista,* 145 F.3d at 1146.

■ "[T]wo requirements must be met before *Miranda* is applicable; the suspect must be in 'custody,' and the questioning must meet the legal definition of 'interrogation.'" *United States v. Ritchie,* 35 F.3d 1477, 1484 (10th Cir.1994) (*quoting United States v. Perdue,* 8 F.3d 1455, 1463 (10th Cir.1993)).

### Interrogation

■ For purposes of Miranda, interrogation "refers not" only to express questioning, but "also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "The test for functional equivalence of interrogation turns not on the subjective intent of the law enforcement officer, though it is a relevant factor, but on the objective assessment that a reasonable person in the suspect's position would perceive the officer's statements and actions as interrogation." *United States v. Singleton,* 922 F.Supp. 1522, 1530 (D.Kan.1996) (citations omitted).

### Voluntary, Spontaneous Statements

■ "If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible." *United States v. Muniz,* 1 F.3d 1018, 1022 (10th Cir.), *cert denied,* 510 U.S. 1002, 114 S.Ct. 575, 126 L.Ed.2d 474 (1993). *See Miranda,* 384 U.S. at 478, 486, 86 S.Ct. 1602 ("Volunteered statements of any kind are not barred by the Fifth Amendment."); *see Innis,* 446 U.S. at 300–02, 100 S.Ct. at 1689–90; *United States v. Thomas,* 1995 WL 106411, at *5 (D.Kan. Feb.13, 1995) ("A suspect's unsolicited and voluntary comments during a search are not the

product of interrogation barred by the Fifth Amendment.").

### Custody

■ "A person is 'in custody' for the purposes of Miranda if he 'has been deprived of his freedom of action in any significant way,' *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612, or his freedom of action has been curtailed to a 'degree associated with a formal arrest,' *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam)." *Ritchie*, 35 F.3d at 1477. "A person has been taken into police custody whenever he 'has been deprived of his freedom of action in any significant way.'" *Perdue*, 8 F.3d at 1463 (*quoting Miranda*, 384 U.S. at 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). "The only relevant inquiry is 'how a reasonable man in the suspect's position would have understood his situation.'" *United States v. Robertson*, 19 F.3d 1318, 1321 (10th Cir.1994) (*quoting Perdue*, 8 F.3d at 1463) (*quoting Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984)), *cert. denied*, 513 U.S. 906, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994). In deciding this issue, the court may consider whether agents restrained the defendant's liberty by means of physical force or show of authority. *See United States v. Pena*, 920 F.2d 1509, 1515 (10th Cir.1990), *cert. denied*, 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991).

### Analysis

■ Miles was in custody at the time Officer Cochran asked "Whose gun is this?" The issue in this case is whether Officer Cochran's question "Whose gun is this?" constituted "interrogation" within the meaning of *Miranda.*

In determining whether Officer Cochran's question constituted impermissible interrogation, the court has considered all of the relevant facts and circumstances, including the manner and tone in which it was asked and if the question was, as the government proffered, directed to everyone in the room. The question is a close one and frankly one which neither the parties nor the court could find a perfect parallel. In the cases cited by the government, the officer's statement in the presence of the defendant was not phrased in the interrogative. *See United States v. Payne*, 954 F.2d 199 (4th Cir.) (officer's comment "They found a gun in your house" not interrogation), *cert. denied*, 503 U.S. 988, 112 S.Ct. 1680, 118 L.Ed.2d 396 (1992); *United States v. Benton*, 996 F.2d 642 (3rd Cir.) (officer's comment that he saw defendant bend over where a gun was found not interrogation), *cert. denied*, 510 U.S. 1016, 114 S.Ct. 613, 126 L.Ed.2d 577 (1993). Officer Cochran statement is clearly phrased in the form of a question and consequently presents a more difficult issue.

Based upon its evaluation of the evidence presented, the court concludes that Officer Cochran's question "Whose gun is this?" was not interrogation within the meaning of *Miranda.* Officer Cochran's question "Whose gun is this?" was a general question directed to no one in particular in the room.[5] Officer Cochran did not specifically direct his question to Miles. Nor was the question asked in a commanding tone. In light of the fact that the execution of the warrant was taking place at Yvette Sugura's apartment and that one or more persons in the room might claim ownership in the firearm, the question primarily served a legitimate investigatory purpose wholly apart from an attempt to elicit an incriminating statement from Miles. In determining whether it was necessary or appropriate to confiscate the weapon for safety concerns, there is no question that Officer Cochran could ask the owner of the apartment, or the other person in her apartment, to whom the gun belonged. That Officer Cochran did not

---

**5.** Although three law enforcement officers were present in the room when the question "Whose gun is this?" was propounded, the possibility that one of them would have had any prior occasion to have left the Raven on the television was remote.

expressly exclude Miles from the reach of his question does not convert his interrogative into impermissible pre-*Miranda* interrogation. Miles' request to suppress his admission that the firearm belonged to him in response to Officer Cochran's question "Whose gun is this?" is denied.

IT IS THEREFORE ORDERED that Miles' Motion to Dismiss for Lack of Federal Jurisdiction (Dk.15) is denied.

IT IS FURTHER ORDERED that Miles' Motion to Suppress (Dk.16) is denied.