**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARQUISE HARRIS, individually;
ARTESIA CABRAL, individually and as
next friend for N.C., a minor child,

     Plaintiffs - Appellees,

v.

SERGEANT GLENN MAHR, in his
individual and official capacity,

     Defendant - Appellant,

and

CITY AND COUNTY OF DENVER, a
municipality; CITY OF AURORA, a
municipality; OFFICER KEVIN BARNES,
in his individual and official capacity;
OFFICER MIKE DIECK, in his individual
and official capacity; OFFICER TASHA
EWERT, in her individual and official
capacity; OFFICER JEREMY JENKINS,
in his individual and official capacity;
OFFICER PAUL JEROTHE, in his
individual and official capacity; OFFICER
JON MAREK, in his individual and official
capacity; OFFICER JEREMIAH MILES,
in his individual and official capacity;
DETECTIVE LARRY BLACK, in his
individual and official capacity;
DETECTIVE DAVID GROSS, in his
individual and official capacity;
DETECTIVE TONI TRUJILLO, in her
individual and official capacity,

     Defendants.
_____

No. 20-1002
(D.C. No. 1:19-CV-00572-MEH)
(D. Colo.)

**ORDER AND JUDGMENT[*]**
_____

Before **HOLMES**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Defendant-Appellant Sergeant Glenn Mahr appeals from the district court's order denying his motion to dismiss. Sergeant Mahr asserted a defense of qualified immunity which the district court rejected. On appeal, he argues that Plaintiffs-Appellees, Marquise Harris, Artesia Cabral, and their infant son N.C., did not allege sufficient facts to establish a failure to intervene, and that the duty to intervene in an unlawful search was not clearly established. We have jurisdiction in this case under the collateral-order doctrine and 28 U.S.C. § 1291. See Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009) ("[A] district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of § 1291"). We conclude that the law was not "clearly established" at the time of the incident and reverse the district court's denial of qualified immunity.

**Background[1]**

On August 17, 2017, officers from the Aurora Police Department ("APD") and Denver Police Department ("DPD") were conducting surveillance on Plaintiffs'

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.
[1] These facts are taken from Plaintiff's First Amended Complaint. See 1 Aplt. App. 130–44.

apartment in Aurora, Colorado. Officers were at the apartment to arrest Mr. Harris because he had been involved in a shooting that day in Denver. DPD oversaw the operation with the help of APD's Strategic Response and Tactics unit. Mr. Harris eventually left his apartment to visit a friend and the officers arrested him.

At the time of the arrest, DPD and APD did not have a search warrant for Mr. Harris' apartment, but DPD Sergeant Englebert told Sergeant Mahr — who was on scene outside of the apartment — that a warrant was being prepared. Sergeant Mahr informed APD officers not to enter the apartment until a search warrant was obtained. Ultimately, a judge never signed a warrant for the apartment.

While Mr. Harris was being arrested, he told officers that they did not have permission to enter his apartment, noting that they did not have a search warrant. Mr. Harris also told the officers that he wanted Ms. Cabral or a family member to get his son, N.C., who was sleeping inside the apartment. Mr. Harris repeated several times that he was not giving officers permission to enter his home.

During this time, there was confusion among APD officers about whether they had been ordered to enter the apartment. Several APD officers were standing at the door and had knocked on it. After speaking to a DPD officer on the phone, an APD officer informed the other officers that DPD did not "want the house," so they left the door and returned to the ground level of the apartment complex. 1 Aplt. App. 134. Seconds later, APD officers walked back up the stairs and an officer asked, "[t]hey want it again now?" Id. Another officer responded, "[t]hat's what one of the Denver guys just said; they want it." Id. The first officer said, "[a]re they writing for the

3

house or they writing for the f---ing guy? 'Cause if they ain't writing for the house then how the f--- . . .?" Id. An APD officer then broke the apartment screen door in anticipation of entering.

Five armed APD officers entered the apartment with their guns drawn. As the officers cleared the apartment, they closely examined Plaintiffs' home. One APD officer picked up N.C. while he was asleep and carried him outside. Although Sergeant Mahr and three DPD Detectives "were on scene and knew that no warrant had been issued, they failed to clarify to APD officers that there was no warrant at the time of the search, and failed to otherwise intervene to prevent the APD officers from unlawfully" searching the home. 1 Aplt. App. 135.

Plaintiffs filed suit against various DPD and APD officers, the City of Aurora, and the City and County of Denver for claims brought under 42 U.S.C. § 1983. As to Sergeant Mahr, Plaintiffs alleged that he violated their rights by failing to intervene in the unlawful search of their apartment. Sergeant Mahr moved to dismiss the complaint asserting a qualified-immunity defense. The district court denied his motion concluding that "Plaintiffs allege a plausible claim for failure to intervene against Sergeant Mahr, which was clearly established at the time of the incident." Harris v. City and Cnty. of Denver, No. 19-cv-00572-MEH, 2019 WL 6876870, at *7 (D. Colo. Dec. 17, 2019).

## Discussion

We review the district court's denial of qualified immunity de novo. Cummings v. Dean, 913 F.3d 1227, 1238 (10th Cir. 2019). Qualified immunity shields government officials from civil liability protecting "all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). To survive Sergeant Mahr's motion to dismiss, Plaintiffs were required to show (1) that "the defendant's actions violated a constitutional or statutory right," and (2) "that the right was 'clearly established at the time of the conduct at issue.'" Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008)). We have discretion to decide which of these elements "should be addressed first in light of the circumstances in the particular case at hand." Pyle v. Woods, 874 F.3d 1257, 1263 (10th Cir. 2017) (quoting Pearson v. Callahan, 555 U.S. 223, 236 (2009)). Even assuming without deciding that Plaintiffs had a plausible claim for violation of a constitutional right based on a failure to intervene, the constitutional right was not clearly established. Id. Therefore, the denial of qualified immunity was error.

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Quinn v. Young, 780 F.3d 998, 1004–05 (10th Cir. 2015) (quoting Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013)). Plaintiffs typically must identify "an on-point Supreme Court or published Tenth Circuit

5

decision," but may also look to the "weight of authority" from other courts. Id. at 1005. Furthermore, clearly established law "must be 'particularized' to the facts of the case," and "should not be defined 'at a high level of generality.'" White v. Pauly, 137 S. Ct. 548, 552 (2017) (citations omitted).

Plaintiffs claim that Sergeant Mahr failed to intervene in an unlawful entry and search of their apartment. To show that such a duty was "clearly established," they rely primarily on an excessive force case stating "that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Vondrak v. City of Las Cruces, 535 F.3d 1198, 1210 (10th Cir. 2008) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). Additionally, they also rely upon two unpublished decisions that apply the duty to intervene in unlawful entry cases. See Anderson v. Campbell, No. 95-6459, 1996 WL 731244, at *4 (10th Cir. Dec. 20, 1996); Reid v. Wren, Nos. 94-7122, 94-7123, 94-7124, 1995 WL 339401, at *2 (10th Cir. June 8, 1995). These cases, however, fail to show that the law was clearly established at the time of the incident.

Although Vondrak recites a broad duty to intervene, it lacks any specificity, especially as to unlawful entry and search cases. The same is true of the case Vondrak relied upon. See Branen, 17 F.3d at 557. In Vondrak, we said that the duty to intervene applies to excessive force and unlawful arrests, as well as "any constitutional violation [that] has been committed by a law enforcement official." Vondrak, 535 F.3d at 1210. But it does not discuss unlawful entries or searches, thus

6

making it a highly generalized statement. See White, 137 S. Ct. at 552 (noting "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality'"); see also District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018) ("It is not enough that the rule is suggested by then-existing precedent.").

Furthermore, the two unpublished decisions cannot carry the weight Plaintiffs place upon them. See Mecham v. Frazier, 500 F.3d 1200, 1206 (10th Cir. 2007) ("An unpublished opinion . . . provides little support for the notion that the law is clearly established on this point."). In Reid, this court found defendants liable for failing to intervene in an unlawful entry because they were "present and heard the conversation between plaintiff and [the other officer]; yet they did not act to stop the allegedly unconstitutional action." Reid, 1995 WL 339401, at *2. In this case, however, Sergeant Mahr was not alleged to be at the door with the searching officers and he previously told them not to enter the apartment without a warrant. These factual differences undermine Reid's ability to clearly establish the law, especially when considering the importance of the facts to a failure-to-intervene claim.[2] See Mullenix, 577 U.S. at 12 ("The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2015))).

---

[2] In failure-to-intervene cases, the plaintiff must prove that the defendant "'observed or had reason to know' of a constitutional violation and [] had a 'realistic opportunity to intervene.'" Jones v. Norton, 809 F.3d 564, 576 (10th Cir. 2015) (quoting Vondrak, 535 F.3d at 1210).

7

In Anderson, we explicitly held that there was no underlying constitutional violation because there was no unlawful entry. Anderson, 1996 WL 731244, at *4. However, we stated that that even if one occurred, the defendants adequately intervened by immediately taking action to stop the entry. Id. This discussion of the failure-to-intervene theory was simply dicta and would not constitute clearly established law.

Given the lack of caselaw, Plaintiffs ultimately must contend that Sergeant Mahr's conduct was "so obviously unconstitutional" that they do not need to identify an on-point case. Aplee. Br. at 24. Plaintiffs point to this court's "sliding scale" approach where "the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." Browder v. City of Albuquerque, 787 F.3d 1076, 1082 (10th Cir. 2015) (quoting Shroff v. Spellman, 604 F.3d 1179, 1189–90 (10th Cir. 2010)). Not only are the "constitutional principles" surrounding a failure to intervene in an unlawful search unclear, but Plaintiffs acknowledge that Sergeant Mahr initially told APD officers not to enter the apartment without a warrant. His failure to take additional steps is not the type of "egregious" conduct that warrants foregoing our traditional requirement of an on-point case.

Finally, Plaintiffs argue that this court should reject the doctrine of qualified immunity altogether. Plaintiffs recognize that they failed to raise this argument in the district court but ask us to use our discretion to consider it on appeal. However, despite any difficulties the framework presents, we remain obligated to follow

qualified-immunity precedents of the Supreme Court and Tenth Circuit. See Ullery v. Bradley, 949 F.3d 1282, 1301 (10th Cir. 2020). Therefore, we decline Plaintiffs' offer to upend the doctrine.

REVERSED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge